# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| RICHARD KENTAFT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:13-CV-50-TLS |
| | ) | |
| LAPORTE COUNTY SHERIFF'S DEPARTMENT and MICHAEL F. MOLLENHAUER, in his Official and Personal Capacities, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

The Plaintiff, Richard Kentaft, filed a Complaint against the Defendants pursuant to 42 U.S.C. § 1983 alleging that they retaliated against him for engaging in protected First Amendment speech. The Complaint also sets forth state law claims against Defendant Michael F. Mollenhauer for tortious interference with a business or employment relationship. The Defendants have moved for summary judgment on all claims. The Plaintiff, in response, does not oppose summary judgment on his tortious interference claims, but submits that genuine issues of material fact require a jury to determine whether Sheriff Mollenhauer engaged in such adverse conduct in response to the Plaintiffs' protected speech that would likely deter First Amendment activity. Because the Court agrees with the Defendants that the Plaintiff did not initiate this litigation within the applicable statute of limitations, the Court need not proceed to the merits of the First Amendment claim.

For the reasons stated in this Opinion and Order, the Defendants are entitled to judgment in their favor as a matter of law.

**BACKGROUND FACTS**

The following facts are derived from the parties' designated evidentiary materials:

The Plaintiff was employed by Norfolk Southern Railroad as a railroad police officer. On October 8, 2010, the Plaintiff was having lunch with Kevin Scurlock, who was a Jail Deputy at the LaPorte County Jail. Scurlock told the Plaintiff about the contents of a letter that a former inmate sent to a female Jail Deputy.[1] The letter was troubling because it suggested a romantic relationship between the two. Sheriff Mollenahauer was in the midst of a re-election campaign, and Scurlock expressed his concern that the Sheriff was not aware of the letter. Scurlock and the Plaintiff believed that the Jail Commander, Scott Bell, was intentionally keeping the letter from the Sheriff. The Plaintiff offered to call the Sheriff to talk about the letter.

During the phone call, the Sheriff told the Plaintiff that he was not aware of the letter and asked the Plaintiff if he could get a copy of it for him. Based on this request, Scurlock sent the letter to the Plaintiff's email, and the Plaintiff later printed a hard copy and delivered it to the Sheriff. When the Plaintiff delivered the letter, the Sheriff inquired how the Plaintiff had come to know about and obtain the letter. The Plaintiff claimed he received it anonymously.

After Scurlock was discovered to be the person who leaked the letter, the Sheriff met with the Plaintiff to relay that he intended to discipline Scurlock for his actions. On October 16, 2010, the Sheriff terminated Scurlock's employment. The employee who provided the picture of the letter to Scurlock, and the employee to whom the inmate had addressed the letter also lost their jobs. The Plaintiff disagreed with Scurlock's termination.

---

[1] According to Scurlock, he received a photograph of the letter through a text from another Deputy.

After the Sheriff terminated Scurlock's employment, the Plaintiff gave an interview to a local reporter and provided her with a copy of the inmate's letter. His on camera interview aired on the morning of October 25. The Plaintiff criticized the Sheriff, saying that it was wrong for Scurlock to be disciplined for doing the right thing for the right reasons while it was Jail Commander Bell who committed a gross dereliction of duty.

The Sheriff saw the interview and held a press conference where he read from a press release prepared as a response. As background, the Sheriff noted the receipt of the letter and the consequent terminations. He stated his belief that his opponent in the election for Sheriff, along with the Plaintiff, exploited the investigation for political reasons. As support, he cited the fact that his opponent had made a formal complaint to the Indiana State Police requesting an investigation into a cover up, which was based on a false accusation against the Jail Commander, specifically that he had a sexual relationship with the deputy who was the subject of the letter. The Sheriff stated that the Plaintiff had violated the same ethical standards for which the three jail deputies were terminated, that the Plaintiff had attempted to strong-arm the Sheriff with threats and blackmail so he would not take action against Scurlock, and that he participated in illegal activity by assisting Scurlock in going outside the Sheriff's office and disseminating evidence. The Sheriff explained the investigative process that Jail Commander Bell had used, assured that there had been no attempt at a cover up, and stated that it was the Plaintiff who made a mistake by assuming that because Bell decided not to tell the Sheriff about the letter until he had investigated further and gathered more evidence, that he was attempting a cover up. The Sheriff stated that the Plaintiff had defamed Bell's good name and professional reputation, intimated that the Plaintiff had subjected himself to civil liability, and advised that he would be

3

conferring with the prosecutor regarding criminal charges for the Plaintiff's role in interfering in the investigation.

Sometime thereafter, Sheriff Mollenhauer contacted the Plaintiff's employer, Norfolk Southern Railroad, and requested to speak with the Plaintiff's supervisor. Steven Kirkman met with the Sheriff. The Sheriff indicated that the purpose of the meeting was to make the Plaintiff's employer aware of the Plaintiff's inappropriate and unprofessional behavior by involving himself in a jail investigation, but the Sheriff declined to file a formal complaint. The Sheriff requested Kirkman's help in talking to the Plaintiff informally to get him to listen to reason, as the Sheriff's own communications with the Plaintiff had broken down completely.[2] After the meeting, Kirkman reported to his boss that no disciplinary action was warranted or needed. Kirkman was not aware of any documentation added to the Plaintiff's employment file as a result of the meeting, and none had been presented in the record to this Court.

The Plaintiff was on medical leave in 2010 when the events involving the jail letter took place. He returned to work a short time later, but went on paid leave in March 2011 following a car accident. On May 16, 2011, the Plaintiff's employer placed him on long term disability. In November 2011, the Plaintiff returned to employment with Norfolk, but not in the same position. He returned to his previous employment position in March 2012.

---

[2] There is some dispute regarding the timing of this meeting, although the parties assume for purposes of summary judgment that it was after the Plaintiff provided the media interview. Sheriff Mollenhauer stated during his deposition that he believed the meeting would not have been until after the investigation was completed, thus after the Plaintiff's interview aired. (Mollenhauer Dep. 47.) Kirkman testified in his deposition that, during the meeting, the Sheriff asked for help trying to get the Plaintiff to understand that the jail matter was being investigated, even if it was not being investigated to the Plaintiff's liking. However, Kirkman did not get a chance to talk to the Plaintiff because, either the same night or the next day, the Plaintiff's television interview aired. This led Kirkman to believe that it would not help to talk to the Plaintiff because he had already made up his mind on the issue. (Kirkman Dep. 18–19.)

**DISCUSSION**

The Plaintiff filed his Complaint against the Defendants on January 25, 2013. The Defendants argue that the Complaint was filed outside the applicable statute of limitations.

**A.     Summary Judgment Standard and Applicable Statute of Limitations**

Summary judgment is proper, and must be granted, where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is properly granted on the basis of a statute of limitations defense if '(1) the statute of limitations has run, thereby barring the plaintiff's claim as a matter of law, and (2) there exist no genuine issues of material fact regarding the time at which plaintiff's claim has accrued and the application of the statute to plaintiff's claim which may be resolved in plaintiff's favor.'" *Massey v. United States*, 312 F.3d 272, 276 (7th Cir. 2002) (citing *Green v. United States*, 765 F.2d 105, 107 (7th Cir. 1985) (quoting *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1219 (7th Cir. 1984))).

Because § 1983 does not provide for a specific statute of limitations, federal courts look to the law of the state where the injury occurred to determine the statute of limitations in a § 1983 case. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *Kelly v. City of Chi.*, 4 F.3d 509, 510 (7th Cir.1993). Specifically, they incorporate the forum state's limitations period for personal injury claims, *Malone v. Corr. Corp. of Am.*, 553 F.3d 540, 542 (7th Cir. 2009), which in Indiana is two years, Ind. Code § 34–11–2–4.

While state law determines the period of limitations, federal law determines when a § 1983 claim accrues. *Hondo, Inc. v. Sterling*, 21 F.3d 775, 778 (7th Cir. 1994). "Generally, a

claim accrues when all its elements have come into existence." *Cathedral Joy Baptist Church v. Vill. of Hazel Crest*, 22 F.3d 713, 717 (7th Cir. 2004). The elements of a First Amendment retaliation claim are (1) activity protected by the First Amendment, (2) a deprivation likely to deter free speech, and (3) evidence showing causation between the speech and the deprivation. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *see also Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) (clarifying that plaintiff in First Amendment retaliation claim must present proof of "but-for causation"). The discovery rule "postpones the beginning of the limitations period of a federal claim from the date the party is injured to the date when the party discovers or should have discovered the injury, exercising reasonable diligence." *Cathedral Joy*, 22 F.3d at 717; *see also Barry Aviation inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) (cause of action accrues when injury "is discovered or should have been discovered").

**B.      The Plaintiff's Claims**

In support of his First Amendment claim, the Plaintiff alleges that the Sheriff took three specific retaliatory actions against him: (1) he issued a news release accusing the Plaintiff of violating criminal and civil laws; (2) he referred the matter to the local prosecutor's office to possibly file criminal charges; and (3) he complained to the Plaintiff's employer. The first two actions took place in late October 2010. The Defendant's conversation with the Plaintiff's employer occurred in October or early November 2010, and the Plaintiff learned about it in December 2010. The Plaintiff did not file his lawsuit until January 25, 2013. His Complaint is untimely unless, as the Plaintiff argues, the discovery rule postponed the accrual date to the date

his employer placed him on long term disability.

The Plaintiff provides his sworn declaration in support of his claim to postpone the accrual date. The Plaintiff was placed on long term disability on May 16, 2011. With respect to this event, he writes:

> When my employment was terminated from Norfolk on May 16, 2011, this is when I realized that my political speech could negatively effect my employment relationship with Norfolk. When my employment was terminated from Norfolk, this is when I realized that Sheriff Mollenhauer's actions infringed upon my constitutional right to First Amendment protected speech.

(Decl. ¶ 6, ECF No. 24-11.) The Plaintiff argues that

> it was the later event of his termination on May 16, 2011, and the discovery in April of 2013 of an actual meeting and complaint by Sheriff Mollenhauer to his employer, that put things in perspective and started the statute of limitations. Although Kentaft was aware of the news conference and a phone call by Sheriff Mollenhauer to his employer in December of 2010, Kentaft did not connect the dots until his termination from Norfolk on May 16, 2011.

(Pl.'s Resp. 16.) He asserts that this is one of those cases where "the earlier violation may be recognizable as actionable only in light of later events." (*Id.* at 16) (quoting *Pitts v. City of Kankakee, Ill.*, 267 F.3d 592, 595 (7th Cir. 2001)).

The principal of law the Plaintiff cites from *Pitts* refers to the continuing violation doctrine, not to the discovery rule. *See Pitts*, 267 F.3d at 595 (explaining how the continuing violation doctrine might apply to govern the accrual of a claim). This is not the type of case to which the continuing violation doctrine applies. The doctrine "allows a plaintiff to get relief for time-barred acts by linking them with acts within the limitations period." *Shanoff v. Ill. Dep't of Human Serv.*, 258 F.3d 696, 703 (7th Cir. 2001). The plaintiff must show "a continuing violation," which the Seventh Circuit has described as "a continuous series of events giv[ing] rise to a cumulative injury." *Heard v. Sheahan*, 253 F.3d 316, 320 (7th Cir. 2001). "The doctrine

applies to claims like sexual harassment, where an individual act cannot be made the subject of a lawsuit when it occurs because 'its character as a violation did not become clear until it was repeated during the limitations period.'" *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 240 (7th Cir. 2004) (quoting *Dasgupta v. Univ. of Wis. Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997)). "In those cases, duration and repetition are necessary to convert merely offensive behavior into an actionable change in the plaintiff's working conditions." *Stepney*, 392 F.3d at 240. There was, in this case, no continuous series of events and no repetition of conduct. The Plaintiff has not alleged that the Defendant engaged in any new retaliatory acts after the three he specifically identified in his Response in Opposition to Defendants' Motion for Summary Judgment.

The Court finds the Plaintiff's argument concerning when he "put things in perspective" to be disingenuous. By the end of 2010 the Plaintiff was aware of the actions he maintains chilled his First Amendment rights. The Plaintiff himself argues that "[r]egardless of whether Norfolk terminated [the Plaintiff] because of Sheriff Mollenhauer, the [Sheriff's] complaint, *alone*, is sufficient to chill free speech." (Pl.'s Resp. 12 (emphasis added).) The Plaintiff maintains in his Response in Opposition to Summary Judgment that the Sheriff's communication with his employer caused him to have to explain the situation to his employer and to feel like he had to censor his speech. The Plaintiff stated in his deposition that he spoke to his supervisor sometime between December 1 and 5, 2010, because his supervisor told him the sheriff called and his supervisor wanted to know what was going on. The Plaintiff testified that:

> So I told him what was going on. Told him what happened. And I mean, at that point in time I — I felt I had to watch out what I said because I didn't realize that — I didn't realize it had made such an issue at work. And I know with the history of the railroad that at that point in time I felt I couldn't say anything.

8

(Kentaft Dep. 48.) He explained that he "felt very intimidated by the fact that now I'm being questioned on something that I didn't feel had anything to do with work." (*Id.* at 49.) In response to a question whether the Sheriff's contact with his employer deterred him from engaging in similar public speech, he stated that he no longer called into a local radio talk show as he had in the past to comment on political issues or other issues within the community. (*Id.* at 93–95.) The Plaintiff, according to his own statements, had ample reason to believe that his legal rights had been infringed when the Sheriff issued public statements about the Plaintiff and contacted his employer.

Additionally, the Plaintiff does not offer any evidence that it was reasonable to believe his termination was in any way connected to the earlier acts of the Sheriff, and thus no support for his conclusory statement that his termination caused him to realize that his political speech "could negatively effect [his] employment relationship with Norfolk." The Plaintiff never actually attempts to establish that the two events were connected. It is difficult to grasp the logic in allowing an event that has not been shown to be related to the claims in the litigation to be used to avoid the statute of limitations that is otherwise applicable to those claims.

The Plaintiff claims that the Defendants violated his rights when Sheriff Mollenhauer issued a press release on October 15, 2010, publicly accusing the Plaintiff "of being a criminal." (Pl.'s Resp. 13.) The Plaintiff asserts that once the Sheriff issued his news release, he "dealt with the ongoing real possibility that he may be arrested for speaking out about the letter." (*Id.* at 11.) And finally, the Plaintiff asserts that the Sheriff chilled his free speech by going to his direct supervisor to complain that the Plaintiff engaged in inappropriate conduct. (*Id.* at 12.) The Plaintiff had two years from knowing about these events to initiate litigation. The Plaintiff did

9

not do so and there are no genuine issues of material fact regarding the timing of these events that could result in an application of the statute of limitations that renders his claim timely. To allow the Plaintiff's claim to proceed would be to ignore the important purpose statutes of limitations serve by "encouraging the prompt filing of claims and by doing so of enhancing the likelihood of accurate determinations and removing debilitating uncertainty about legal liabilities." *Shanoff*, 258 F.3d at 703 (internal quotation marks omitted).

## CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment on Counts I, II, and III of the Plaintiff's Complaint [ECF No. 22] is GRANTED. The Clerk will enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on August 26, 2014.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION